UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CASE NO. 1:07-CV-00196-R

**IVY T. ROBERSON**　　　　　　　　　　　　　　　　　　　　　　　　　　　　**PLAINTIFF**

**v.**

**PROPERTY AND CASUAL INSURANCE**
**COMPANY OF HARTFORD**　　　　　　　　　　　　　　　　　　　　　　　**DEFENDANT**

## MEMORANDUM OPINION

This matter comes before the Court on Defendant's Motion for Summary Judgment (DN 31). Plaintiff has responded (DN 35) and Defendant has replied (DN 40). This matter is now ripe for adjudication. For the reasons that follow, Defendant's Motion for Summary Judgement is GRANTED.

## BACKGROUND

This matter arises out of a motor vehicle accident on December 23, 2006, in which Plaintiff, Ivy T. Roberson, was injured. Following the collision, Roberson reached a settlement with the opposing driver and his liability insurance carrier. Roberson subsequently filed a claim for underinsurance benefits against Defendant Property and Casual Insurance Company of Hartford ("Hartford"), which was denied. On December 6, 2007, Roberson filed a suit against Hartford for underinsurance benefits. In her remaining claim, Roberson alleges that Hartford failed to adequately advise her of her option to include underinsured motorist coverage on her policy, and to adequately explain and educate underinsurance coverage to her.

Hartford has a program with the Association of Retired Persons ("AARP") in which it provides access to insurance coverage to its members. On February 3, 2006, Roberson, who is an AARP member, called Hartford for an insurance quote. Her conversation with Hartford's

representative, Rocco "Rock" Erardi, was recorded and a transcript of the conversation has been submitted to the Court. During the conversation, Rock asked Roberson various questions in order to obtain a quote for coverage equivalent to her then current insurance coverage. With respect to underinsurance coverage, the conversation consisted of the following:

> Q: Uninsured and underinsured?
> A: I'm sorry, I don't understand.
>
> Q: Uninsured and underinsured uh liability, is that 250/500?
> A: Uh bodily injury per person per accident?
>
> Q: Right, got that.
> A: Okay.
>
> Q. And then if you're involved in an accident not at-fault, but the person at fault does not have insurance or does not have enough insurance do you have that coverage?
> A. Uh I don't see that on here.
>
> Q. Alright, you don't necessarily need it. What is your comprehensive and collision deductible?
> A. It says comprehensive 100, uh collision 1000.
>
> . . .
>
> Q. Alright, now just double check for me, Ms. Roberson, make sure you don't have uninsured and underinsured coverage, cause my bet is that you do, but you may not.
> A. Well I'm just lookin at the front of the policy.
>
> Q. Okay.
> A. Would it be an addendum or something somewhere else?
>
> Q. Double check for me and if you don't have it, that's fine. I just wanna make sure I'm comparing apples to apples.
> A. I understand, uh bodily injury, property damage, personal injury protection, basic comprehensive, towing and rental and that's all that's on the front page.
>
> Q. How 'bout on the second page, anything else?
> A. Let me see if there's anything added. I'm sorry to take up your

>    time.
>
> Q. You're not. I'm here to help ya, I wanna insure you. Here's what I'm gonna do. I'm gonna quote you without it, and then I'll quote you with it.
> A. Alright, that would be great, that'll cover it. But I don't believe it's in here.
>
> Q. Okay, that's fine.
> A. Okay.
>
> Q. I'll be right back with your quote.
> A. Thank you.

After additional questions, Rock provided Roberson with a quote that matched her current coverage, which did not include uninsured or underinsured coverage. Roberson asked if he ran the quote with "uninsured motorist," and Rock responded that he had not but he would. Roberson then stated that he could just send a quote along with the sample policy.

On February 23, 2006, after she received her Kentucky Automobile Insurance Application form, Roberson called Hartford a second time and spoke with Christine "Chris" Bealieau. Roberson's application was clearly marked that she "rejected" both uninsured and underinsured coverage. During this conversation, Roberson told Chris that she wanted to add uninsured motorist coverage. This conversation was also recorded and transcribed. There is no evidence of any other conversation between Roberson and Hartford regarding her insurance policy and coverage. Roberson subsequently received a supplemental application to confirm her uninsured and underinsured motorist coverage, which she signed and returned to Hartford.

## STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact

and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

Finally, while Kentucky state law is applicable to this case pursuant to *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938), a federal court in a diversity action applies the standards of Fed. R. Civ. P. 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476 (Ky. 1991)." *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 165 (6th Cir. 1993).

## DISCUSSION

Roberson claims that Hartford failed to adequately advise her of her option to include

underinsured motorist coverage on her policy, and to adequately explain and educate underinsurance coverage to her. An insurance agent ordinarily does not owe an insured a duty to advise, but may expressly or impliedly assume such a duty. *Mullins v. Commonwealth Life Ins. Co.*, 839 S.W.2d 245, 248 (Ky. 1992). An express duty to advise "may be present if the company, or agent, represents directly, or by advertising, that it will assume responsibility to advise the customer as to what is needed." *Id.* at 249. "An implied assumption of duty may be present when: (1) the insured pays the insurance agent consideration beyond a mere payment of the premium, (2) there is a course of dealing over an extended period of time which would put an objectively reasonable insurance agent on notice that his advice is being sought and relied on, or (3) the insured clearly makes a request for advice." *Id.* at 248 (internal citations omitted). "The insured has the burden of proving that the insurer assumed" a duty to advise. *Id.*

If Roberson does not prove that Hartford assumed a duty to advise her, then Hartford is entitled to summary judgement. Roberson states in her affidavit that she did not know what underinsurance was, that Hartford did not explain underinsurance to her so she could make an informed decision regarding underinsurance, and that she now knows what underinsurance is and had Hartford explained it to her and advised that the premium to add underinsurance to her policy was only $20-25 per year for $250,000/500,000 limits, she would have purchased it. Even if proven, however, these alleged facts do not matter if Hartford did not assume a duty to advise Roberson.

First, Roberson does not argue that Hartford expressly assumed a duty to advise, nor does she argue that she paid the agent consideration beyond a mere payment of the premium.

Second, instead of arguing that she had a course of dealing with Hartford over an

5

extended period of time, she argues that Hartford has developed a course of dealing with AARP members over an extended twenty-three year period of time. Roberson states that Hartford wants AARP members to believe that it has a special relationship with them, so it would be reasonable for AARP members to think that they can rely upon Hartford's advice. The question, however, is not whether Hartford had a course of dealing with AARP members so that it would be reasonable for AARP members to think they can rely upon Hartford's advice, but rather whether Roberson had a course of dealing over an extended period of time with Hartford which would put an objectively reasonable insurance agent on notice that his advice is being sought and relied on. Roberson does not claim that her relationship with Hartford would put an objectively reasonable insurance agent on notice that his advise is being sought and relied on, and the Court does not find that this was the case.

Third, Roberson does not claim that she clearly made a request for advice. Instead, she argues that the fact that the underinsured issue was raised by the insurance agent as opposed to the insured should make no difference because once an issue is raised, it should be fully explained and discussed between the parties irrespective of who may bring it up. Roberson's argument misses the mark. She is correct that it does not matter who raises the subject, what matters is whether she clearly made a request for advice. The Court finds that Roberson did not clearly make a request for advice in either of her conversations with Hartford agents.

## CONCLUSION

Because Roberson has not shown that Hartford assumed a duty to advise her regarding underinsurance coverage, Hartford's Motion for Summary Judgement is GRANTED.

An appropriate order shall issue.